# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

WAYNE J. SUMLIN,        )
                                   )
          Movant,         )
                                   )
vs.                            )
                                   )    Case No. 1:04CV00151 ERW
UNITED STATES OF AMERICA,   )
                                   )
        Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court upon *pro se* Movant Wayne J. Sumlin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1], filed on November 1, 2004. The Government filed its Response [doc. #7] on January 18, 2005, requesting this Court deny Movant's motion without an evidentiary hearing.

## I.       BACKGROUND FACTS

On July 28, 2003, Movant entered a guilty plea to a two-count indictment, charging in each count that he knowingly and intentionally distributed five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (2000),[1] and punishable under 21 U.S.C. § 841(b)(1)(B) (2000)[2]. The Plea

---

[1] 21 U.S.C. § 841(a)(1) states: "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

[2] 21 U.S.C. § 841(b)(1)(B) states: "In the case of a violation . . . involving . . . 5 grams or more of a mixture or substance . . . which contains cocaine base . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . ."

Agreement and Stipulations states that Movant knowingly and intentionally under Count I sold to an informant for the Sikeston Department of Public Safety 5.9 grams of cocaine base on March 28, 2002, and under Count II sold 6.1 grams on April 9, 2002. In the Parties' plea agreement, Movant agreed to waive all rights to contest the conviction or sentence in any post conviction proceeding, including a motion under § 2255, reserving the right to appeal on grounds of prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing.

On October 16, 2003, the United States Probation Officer filed an initial Presentence Report which included information regarding Movant's prior criminal history. Specifically, the Report stated that on October 10, 1991, Movant was sentenced to ten years in the Missouri Department of Corrections as a result of a conviction for sale of a controlled substance. The Report also stated that the present offense was committed while the Movant was on parole from his prior conviction and within two years from his release from custody. Based on these facts, the report concluded that the Movant's Criminal History Category was III under the United States Sentencing Guidelines. That Presentence Report also concluded that the base offense level was 36, and with a Criminal History Category of III, the sentencing range was from 168 to 210 months. No objections to this Presentence Report were filed. After the final Presentence Report was filed on October 20, 2003, Movant requested leave to file objections to the final Presentence Report, arguing that a base offense level should be set at 30 with a sentence range of 87 to 108 months because Movant was responsible for only between 50 and 150 grams of cocaine base and should receive a two-level downward adjustment for being a minor participant.

On October 27, 2003, when the parties appeared for sentencing, Movant initially continued to rely on his recently filed objections to the final version of the Presentence Report which concluded

that he was responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. Movant's counsel, Mr. Kale, stated, "I did file objections. We have come to an agreement as to the base offense level, basically is an amount between 150 and 500, and base offense level of 34, and then three levels off for acceptance, and then in that range, which is 135 to 168, is that right? We have agreed to 144 months, and I'm going to withdraw my objection based on that agreement." The Assistant United States Attorney stated that the government was willing to stipulate that Movant was responsible for at least 150 grams but less than 500 grams of cocaine base as part of the plea agreement, but that the Government was prepared to present evidence that the quantity of the drugs for which Movant was responsible actually "far exceeded" this stipulated amount. The United States Attorney agreed to reduce the base offense level from 36 to 34, and both parties agreed that Movant should be sentenced to a term of 144 months imprisonment. The Court further reduced the offence level of 34 by three points to reflect Movant's acceptance of responsibility. After concluding that the Total Offense Level of 31 carried a sentence range from 135 to 168 months, the Court followed the parties' recommendation and sentenced Movant to imprisonment for 144 months, to be followed by a five-year term of supervised release.

No direct appeal was filed. The present Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody was filed in the Court on November 1, 2004,[3]

---

[3] "A 1-year period of limitation shall apply to a motion under [§ 2255]." 28 U.S.C. § 2255. "[T]he one-year time limit for filling § 2255 motions is a statute of limitation and not a jurisdictional bar." *Moore v. United States of America*, 173 F.3d 1131, 1134 (8th Cir. 1999). "The limitation period shall run from . . . (1) the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255 (1). Movant entered a guilty plea on July 28, 2003, and was sentenced on October 27, 2003. Movant had ten days to file a notice of appeal after the sentencing date. Although the present § 2255 motion was not filed until November 1, 2004, *pro se* § 2255 motions are subject to the prison mailbox rule which deems the filing date to be the date on which the prisoner delivered his notice to prison authorities. *Houston v. Lack*, 487 U.S. 266,

alleging the following five grounds for appeal[4]:

**Ground One:** Movant received ineffective assistance of counsel at the sentencing stage of the criminal proceeding in violation of his rights under the Sixth Amendment to effective assistance of counsel.

**Ground Two:** Movant's Sixth Amendment right to a jury determination of facts which served to increase his sentence were denied when the court made the factual determination on its own.

**Ground Three:** The Court's factual determination that Movant had a prior felony drug conviction as defined by 21 U.S.C. § 802(44) was a factual finding that was not charged and increased the length of his sentence.

**Ground Four:** The provisions of 21 U.S.C. § 851(c)(1) violate the Sixth Amendment to the Constitution of the United States.

**Ground Five:** The Movant's Fifth Amendment right to a grand jury indictment charging each of the elements of the offense and Movant's Sixth Amendment right to notice were violated when the precise amount of drugs and the alleged prior felony drug conviction were not charged in the indictment.

The Court concludes that Movant's Motion can be conclusively determined based on the Motion, files and records in the case. Therefore, an evidentiary hearing for this Motion will not be conducted. *See Shaw v. United states,* 24 F.3d 1040,1043 (8th Cir. 1004). For the reasons set forth below, the Court concludes that all of the above Grounds are without merit. Accordingly, the Court will dismiss Movant's Motion under 28 U.S.C. § 2255 [doc. #1].

---

270-71 (1988). Movant signed his Motion and placed it in the prison mailing system on October 27, 2004. ("Absent evidence to the contrary in the form of prison logs or other records, [the court] will assume that [Movant]'s motion was delivered to prison authorities the day he signed it". *Washington v. United States*, 243 F.3d 1299, 1301(11th Cir. 2001)). Consequently, the present Motion, deposited in the prison mailing system on October 27, 2004, is within the 1-year limitation period pursuant to § 2255.

[4] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## II.     STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

A federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quotations and citations omitted).

A § 2255 motion may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. The United States Supreme Court held that a showing of ineffective assistance of counsel requires a petitioner to demonstrate: 1) that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and 2) that "counsel's deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). The test articulated in *Strickland* applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To prove ineffective assistance of counsel, under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that

counsel's deficient performance prejudiced the case. *Id.* at 697. In order to satisfy the second prong, i.e., the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The court may address the two prongs in any order, and if the petitioner fails to make a sufficient showing of one prong, the court need not address the other prong. *Strickland*, 466 U.S. at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (holding that "[i]f we can answer 'no' to either question, then we need not address the other part of the test.").

Movant does not challenge the voluntariness of his guilty plea. His challenge to ineffective assistance of counsel is stated in Ground One, and relates only to "ineffective assistance of counsel at the sentencing stage of the criminal proceeding..." He acknowledges the limitation in his Memorandum in Support of Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. He recites, "[a]ccordingly, Movant's claim is grounded upon ineffective assistance of counsel **at the sentencing phase of the case." (Emphasis supplied).** His Motion in this regard is very specific. In the Plea Agreement, Guidelines Recommendations and Stipulations document, the language as to his reserved appellate rights are likewise clear beyond doubt. That Agreement states:

> in the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to: any issues relating to pre-trial motions, hearings and discovery; any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, and whatever sentence is imposed; any issues relating to the establishment of the Total Offense Level or Criminal History Category determined by the Court, except that the parties reserve the right to appeal from any Chapter 5 upward or downward departure from the Guidelines range if such departure is not agreed to in this document... The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United states Code, Section 2255, **except for**

**claims of prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing.** (emphasis supplied).

Movant waived all of his rights to make a direct appeal, and he does not argue that he has any right to make any challenge beyond rights he may assert at the time of sentencing. Once a guilty plea is entered, the focus of collateral attack under § 2255 is limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). When a defendant waives his appeal and post conviction relief rights in a plea agreement, the waiver will be enforced if it was knowingly and voluntarily made. *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) (citing *United States v. Goings*, 200 F.3d 539, 543 (8th Cir. 2000)). However, where a petitioner is arguing in his § 2255 motion that the plea and the waiver were not knowing and voluntary due to ineffective assistance of counsel, then the waiver does not bar the § 2255 claims. *Id.* at 924. Movant makes no claim in his § 2255 Motion that his plea of guilty or his waiver of rights were not knowingly and voluntarily made.

Plea bargaining does not violate the Constitution, even though a guilty plea waives important constitutional rights. *Newton v. Rumery*, 480 U.S. 386, 393 (1987). It is well-settled that a defendant may affirmatively waive particular constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); *Faretta v. California*, 422 U.S. 806, 836 (1975) (right to counsel). There is no constitutional right to appeal; the right to appeal is purely a creature of statute. *Abney v. United States*, 431 U.S. 651, 656 (1977). If defendants can waive fundamental constitutional rights, they are not precluded from waiving procedural rights granted by statute. *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992) (citing *United States v. Wiggins*, 905 F.2d 51 (4th Cir.

1990)).  Therefore, a defendant may waive certain procedural appellate rights. *Id*.  Accordingly, a defendant who pleads guilty and expressly waives the statutory right to raise objections to a sentence may not then seek to appeal the very sentence which itself was part of the agreement. *Id*.

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been upheld by the Eighth Circuit. *See United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999); *United States v. Michelsen*, 141 F.3d 867, 873 (8th Cir. 1998); *United States v. His Law*, 85 F.3d 379, 379 (8th Cir. 1996); *Rutan*, 956 F.2d at 829.  In *DeRoo v. United States*, the Eighth Circuit noted that, "[a]s a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement." 223 F.3d at 923.    The chief virtues of a plea agreement are speed, economy and finality. *Id*. at 923. These virtues "are promoted by waivers of collateral appeal rights as much as by waivers of direct appeal rights." *Id*.  Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." *Id*.  The Eighth Circuit has determined that a waiver of a right to appeal is enforceable if the waiver is knowingly and voluntarily made, and the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829.

However, such waivers are not absolute.  For example, the Eighth Circuit has determined that defendants cannot waive their right to appeal an illegal sentence, which is a sentence imposed in violation of the terms of an agreement. *DeRoo*, 223 F.3d at 923.  In addition, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id*. (citing *Morrison*, 171 F.3d at 568).  Even when these conditions are met, however, a waiver will not be enforced where to do so would result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003).

The Eighth Circuit stated that "the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception. Any sentence imposed within the statutory range is not subject to appeal. Specifically, an allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." *Id.* at 892. A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less then the permissible statutory penalty for the crime. *Id.*(citing *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002)).

## III. ANALYSIS

**A. GROUND ONE   Movant received ineffective assistance of counsel at the sentencing stage of the criminal proceeding in violation of his rights under the Sixth Amendment to effective assistance of counsel.**

Movant's claim for relief under this ground is that his counsel permitted the imposition of a sentence based on uncharged facts not found by a jury beyond a reasonable doubt. Movant made no challenge to the indictment on direct appeal, and, as noted, he waived his right to file a direct appeal. He now alleges that the indictment did not charge him with any specific amount of cocaine base, other than "five grams," and he was entitled to have a jury determine, beyond a reasonable doubt, the specific amount attributable to him. Actually, the indictment charges that Movant did "knowingly and intentionally distribute five grams or more of cocaine base. At the hearing where Movant entered a guilty plea, he accepted as true the Assistant United States Attorney's statement of facts that under count one Movant "sold 5.9grams of cocaine base... to an informant...." and that under count two he "knowingly and intentionally sold 6.1 grams of cocaine base...to an informant...." (change of plea

hearing Tr. pp 11,12).   He is incorrect when he states in his Memorandum filed November 1, 2004

that he has admitted to distribution of no more than ten grams of cocaine base.

Under this same ground, Movant alleges that it was improper for the sentencing court to

sentence him based on the assumption that the ten year mandatory minium sentence applied because

a prior drug conviction in state court was not alleged in the indictment and predicate findings were not

made by a jury beyond a reasonable doubt that the offense was committed by him.  His view is that

his counsel was ineffective for not objecting to these factual findings by the Court.  These claims were

not directly appealed.  It is very clear from the record that Movant knew he was facing a mandatory

minimum ten year sentence when he entered his guilty plea.  The Court asked the Assistant United

States Attorney to recite the range of punishment into the record.  He responded,

> Your Honor, the range of punishment as to each count is a term of
> imprisonment of not less than ten years nor more than life and/or 4
> million fine and a period of supervised release of at least eight years.
> (change of plea hearing Tr. p. 16).

The Court then inquired, "[t]he manditory minimum was how long?"  The Assistant United States

Attorney answered, "[n]ot less than 10 nor more than life based upon the notice of enhanced sentence

which was filed in this case in September."  The Court then stated on the record, "Congress has passed

a law that says if there is a conviction under this section as charged that the minimum sentence that

you can receive is ten years or 120 months.  Do you understand?"  The Defendant then stated, "I

understand." (change of plea hearing Tr. pp. 16,17).  The guilty plea was entered on July 28, 2003.

The sentencing hearing was held on October 27, 2003.  The notice of enhanced sentence was entered

on September 16, 2002.

The Court concludes that Movant's waiver of his rights included the "factual basis for the plea, and whatever sentence is imposed; any issues relating to the establishment of the Total Offense Level or Criminal History Category **determined by the Court**...." (change of plea hearing Tr. p 2)(emphasis supplied). The Movant agreed that the Court would make the decisions he now believes should have been made by a jury. The Movant has waived the rights to have a jury make the challenged decisions. Notwithstanding that conclusion, because Movant relies on several recently decided United States Supreme Court decisions, the Court will address the failure of Movant's Motion under an analysis of applicability of United States Supreme Court cases before or since Movant's sentencing hearing.

A § 2255 motion is not a substitute for direct appeal; it is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L. Ed. 2d 109 (1974). Wilson may not obtain § 2255 relief for "unopposed errors to which no contemporaneous objection was made" unless he can show both cause and prejudice. (internal citation omitted). *United States v. Wilson,* 997 F. 2d 432, 429, 431 (8th Cir. 1993). Here, Movant can show neither cause nor prejudice as to issues herein that should have been presented on direct appeal. Irrespective of Movant's waiver of appellate rights, the Court will otherwise address his arguments.

The United States Supreme Court, since the case of *Almendarez-Torres v. United States,* 523 U.S. 224 (1998) (Breyer)*,* has repeatedly addressed issues relating to due process protection as it relates to a defendant's right to have certain issues decided by a jury, rather than a judge, along with the exceptions to be applied. The Court will attempt to briefly recognize the series of cases and make conclusions as to their individual applicability to Movant's action.

*Almendarez-Torres* involved a prosecution under 8 U.S.C. § 1326 (a) which defines the crime of forbidding a deported alien from returning to the United States without permission. Subsection (b)(2) authorizes an enhanced sentence if the "initial deportation was subsequent to a conviction for commission of an aggravated felony." The question before the Court was whether Subsection (b)(2) defined a separate crime or was simply an enhanced penalty. If it is a separate crime the Government must state the additional element in the indictment, but that requirement is not necessary if the provision of the statute merely authorizes an enhanced sentence. This is the seminal case holding that the challenged Subsection was a penalty provision which simply authorizes a court to increase a sentence for recidivism, so neither the statute nor the Constitution requires the Government to charge the factors of an earlier conviction. All the cases referenced by Movant have consistently upheld that ruling.[5] Under *Almendarez- Torres* and cases decided thereafter that have uniformly sustained it, a trial court's determination of the existence of a prior offense in a current criminal prosecution and its impact on a current sentence is proper, and such a determination is not, contrary to Movant's conclusion, a decision reserved for the jury.

*Jones v. United states,* 526 U.S. (1999) (Souter) interpreted 18 U.S.C § 2119, a federal carjacking statute, insofar as to whether the statute under which Jones was charged defined three separate crimes or a single crime with a choice of three maximum penalties. Jones was indicted under § 2119 which read, "[w]hoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall

---

[5]Although, as Movant suggests, Justice Thomas, in an *Apprendi* dissent calls into question that conclusion.

(1) be fined under this title or imprisoned not more than 15 years, or both, (2) if serious bodily injury... results, be fined under this title or imprisoned not more than 25 years, or both, and (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both." After Jones was found guilty, the Pre-Sentence Report recommended 25 years for the carjacking because one of the victims had suffered serious bodily injury. The indictment did not reference the statute's subsections and charged no underlying facts. The arraigning Magistrate told Jones that he was facing a maxium of 15 years imprisonment. The jury instructions referenced only the first paragraph of § 2119 without mentioning serious bodily injury. The Court concluded that "construing § 2119 as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for verdict" allays serious constitutional questions.

Closely behind *Jones* came *Apprendi v. New Jersey,* 530 U.S. 466 (2000) (Stevens) which involved a state statute classifying possession of a firearm for an unlawful purpose as a "second-Degree" offense which was punishable by imprisonment for "between five years and 10 years." A separate "hate-crime" statute provided for an extended term of between 10 and 20 years if the trial judge finds that the "defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." The Court concluded that the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury with proof beyond a reasonable doubt. The Court recognized that "nothing in this history suggests that it is impermissible for judges to exercise discretion–taking into consideration various factors relating both to offense and offender –in imposing

a judgment *within the range* prescribed by statute." Then, the Court cited the now famous words, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362,2363. The rule propounded in *Almendarez-Torres* was held not to apply to the New Jersey statute because recidivism did not relate to the commission of the offense.

  *Apprendi* was obviously decided before Movant entered a guilty plea or was sentenced. While the amount of Cocaine base for which Movant was responsible which he confessed to be at least 500 grams but less than 1.5 kilograms under both Counts One and Two, this, as Movant claims, was not charged in the indictment, or submitted to the jury for deliberation. The Court made the decisions by a preponderance of the evidence. However, at the time Movant was sentenced, the United states sentencing Guidelines were extant, and it was mandated that district judges make calculations under the United States Sentencing Guidelines, determining among many other issues that enhanced sentences, the identity and quantity of drugs for which a defendant would be responsible in finally assessing the Total Offense Level. Also, Movant agreed in the plea agreement that the Total Offense Level and Criminal History Category would be determined by the Court. *Apprendi* did not proscribe a district court's responsibility in making decisions pertaining to sentencing under the United States Sentencing Guidelines.

  *Ring v. Arizona,* 536 U.S. 584 (2002) (Ginsburg) overruled *Walton v. Arizona,* 497 U.S. 639 in deciding that a trial judge sitting alone could not decide the presence or absence of aggravating factors following a jury adjudication of defendant's guilt for imposition of the death penalty, for such conduct would violate a defendant's Sixth Amendment right to a jury trial in capital prosecutions. "Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury

determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 2432. The Court concluded that based solely on the verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment, because in Arizona, a death sentence may not legally be imposed unless at least one aggravating factor is found to exist beyond a reasonable doubt. The Court found that such a factor could not be decided by a judge. "Because Arizona's enumerated aggravating factors operate as the functional equivalent of an element of a greater offense...the Sixth Amendment requires that they be found by a jury." *Id.* at 2443. The recidivism issue was not proscribed in the opinion. This case is referenced to reflect its place in the line of cases that have restricted judicial factfinding.

Perhaps no opinion in recent times has caused as much sudden-impact discussion among members of the bar practicing criminal law, trial judges and appellate judges as *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531 (2004) (Scalia). Blakely pleaded guilty in state court, where sentencing guidelines had been adopted, to the offense of kidnaping his estranged wife. The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months. The sentencing judge imposed an "exceptional" sentence of 90 months concluding that Blakely had acted with "deliberate cruelty." The Supreme Court found a Sixth Amendment violation of Blakely's right to a trial by jury. Under the Washington State Sentencing Reform Act, Blakeley's offense of Second-degree kidnapping with a firearm had a "standard range"of 49 to 53 months. A judge could impose a sentence above the standard range if he or she found "substantial and compelling reasons justifying an exceptional sentence." The Court analyzed the facts pursuant to the *Apprendi* approach and found that the rule did not prevent a defendant from waiving his *Apprendi* rights. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the

relevant facts or consents to judicial factfinding." *Id.* at 2541. Any retroactive application of *Apprendi* would not help Movant, because he consented to judicial factfinding when he made his guilty plea.

Finally, *United States v. Booker,* 125 S.Ct. 738 (2005) (Stevens, Breyer) concludes that the United States Sentencing Guidelines as manditorily applied, violate the Sixth Amendment. Booker was charged with possession with intent to distribute at least 50 grams of cocaine base. The jury was advised that he had 92.5 grams of cocaine base in his duffel bag, and found him guilty of violating 21 U.S.C. 841 (a)(1), which prescribes a minimum sentence of 10 years in prison and a maximum sentence of life for that offense. § 841 (b)(1)(A)(iii). Considering Booker's criminal history and the quantity of drugs found by the jury, the United States Sentencing Guidelines required the district judge to select a base offense level of not less than 210 months nor more than 262 months. After conducting a post-trial hearing the sentencing judge concluded by a "preponderance of the evidence" that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice, which findings mandated a sentencing range of between 360 months and life imprisonment.

Respondent Fanfan, whose case was consolidated with Booker on appeal, was charged with conspiracy to distribute and possess, with intent to distribute, at least 500 grams of cocaine in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1) (B)(ii). A jury found him guilty, answering yes to the question of whether the amount of the cocaine exceeded 500 grams. Without additional findings his maximum sentence would have been 78 months.

Relying upon the recently decided *Blakely* opinion, the trial judge in *Fanfan* found additional facts that defendant was responsible for 2.5 kilograms of cocaine powder and 261.6 grams of crack. The judge found by a preponderance of the evidence that Fanfan was an organizer, leader, manager, or supervisor in the criminal activity which findings required enhancements of 15 or 16 years instead

of the 5 or 6 years authorized by the jury. The judge concluded that he could not, under *Blakely,* sentence the defendant beyond the findings of the jury. The Government appealed. Justice Stevens, delivering the opinion of the Court, in part, reaffirmed *Apprendi.* Justice Breyer, delivering the opinion of the Court , in part, concluded that the Sixth Amendment requirement that the jury must find certain sentencing facts was inconsistent with the Federal Sentencing Reform Act, and that "18 U.S.C. § 3553(b)(1) (Supp. 2004) [is] incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, §3742 (e) (Main ed. and Supp. 2004), which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended,18 U.S.C. § 3551 *et seq.,* 28 U.S.C. § 991 et *seq.* makes the Guidelines effectively advisory. *Booker* requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553 (a)(4). *Id.* at 756, 757. A standard of judicial review of "unreasonableness" was adopted. Cases on direct review fell under the umbrella of the ruling, and the ruling was otherwise not retroactively applied.

There is no provision in *Booker* providing for retroactive review for post-conviction remedies. Movant contends that counsel was ineffective when he failed to object to the Court's factual determinations as to drug quantity and Movant's prior felony conviction, which was used to enhance Movant's sentence. However, Movant's argument rests on the erroneous assumption that *Blakely*, as applied to federal sentencings in *Booker*, is retroactively applicable to cases on collateral review. This court has concluded that *Booker* is not retroactively applicable to cases on collateral review. *See Never Misses a Shot v. United States*, 2005 WL 1569403 (8th Cir., Jul. 7, 2005) (holding that *Booker* is not retroactively applicable to cases on collateral review).

The *Blakely* Court reserved decision about the status of the federal sentencing guidelines. 542 U.S. 296, 124 S. Ct. at 2538 n.9. However, the Supreme Court's subsequent decision in *United States v. Booker* applied the analysis of *Blakely* to the federal sentencing guidelines. 125 S. Ct. 738, 769 (2005) (holding that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment, and the provisions of the Federal Sentencing Act which make the guidelines mandatory are unconstitutional). Because it was *Booker*, not *Blakely*, that applied to the federal sentencing guidelines, the Court's new rule became effective for federal sentencing on January 12, 2005, the day *Booker* was decided. *Never Misses a Shot*, 2005 WL 1569403.

The *Booker* Majority did not address whether its new rule applied retroactively to cases on collateral review, however, the reasoning in the Supreme Court's decision in *Schriro v. Summerlin,* 542 U.S. 348, 124 S. Ct. 2519 (2004) is applicable here. *Summerlin* held that the Court's new rule in *Ring* was not retroactively applied to cases on collateral review. 542 U.S. 348, 124 S. Ct. at 2526 (citing *Ring,* 536 U.S. at 609. *Ring* held that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. *Ring*, 536 U.S. at 609. *Ring* and *Booker* both relied heavily on *Apprendi*, 530 U.S. at 490, which held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to jury and proved beyond reasonable doubt. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule because it did not "alter[] the range of conduct or the class of persons that the law punishes." 542 U.S. 348, 124 S. Ct. at 2523. The Court noted that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing

on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Id*.

Like *Ring*, *Booker* affects only the procedural issues of the identity of the fact finder and the quantity of evidence required to pass sentence, and does not alter the substance of what primary conduct is unlawful. Although the federal sentencing guidelines are no longer mandatory, district judges must continue to consult them when fashioning sentences. *Booker*, 125 S. Ct. at 767. No "conduct" has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for the purposes of retroactivity analysis.

A procedural decision may be applied retroactively if it establishes one of those rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin*, 542 U.S. 348, 124 S.Ct. at 2524. The Court held in *DeStefano v. Woods* that fundamental fairness is not called into question when deciding between the judge or jury as fact-finder. 392 U.S. 631, 634 (1968). In *Summerlin*, the Court again addressed this issue noting that it is not clear which fact-finder is more accurate. 542 U.S. 348, 124 S. Ct. at 2525. In addition, the end result of *Booker* neither moves any decision from judge to jury, nor changes the burden of persuasion. *Booker* held that decisions about sentencing factors will continue to be made by judges so long as the guideline system is flexible in its application. 125 S. Ct. at 767. This minor modification to the sentencing procedure does not constitute a "watershed" change that fundamentally improves the fairness or accuracy of the criminal process. *See Summerlin*, 542 U.S. 348, 124 S. Ct. at 2522. Because *Booker* provides a new procedural rule that does not rise to the level of a "watershed" change, it is not retroactively applicable to cases on collateral review. *See Never Misses*

*a Shot*, 2005 WL 1569403.  While Movant's argument would collapse under a *Booker* challenge, such analysis is unnecessary because the Movant's sentence precedes the Supreme Court's *Booker* opinion, and *Booker* cannot be retroactively applied.  Movant was sentenced on October 27, 2003, and *Booker* was not decided until January 12, 2005, the Movant's case is not subject to a *Booker* challenge.

Even if *Booker* were retroactively applied to a collateral proceeding, the admission exception carved out in *Blakely* prohibits Movant from obtaining relief.  "When a defendant pleads guilty, the [Government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely*, 542 U.S. 296, 124 S. Ct. at 2541.  Here, Movant contends that the drug quantity and prior drug convictions were judicially determined.  However, the Movant withdrew his objection to the Presentence Report which indicated that Movant was directly responsible for between 500 grams and 1.5 kilograms of cocaine base.  The Parties agreed that Movant would be held responsible for at least 150 grams but less than 500 grams of cocaine base.  In return, Movant agreed to withdraw his objections to the Presentence Report.  This stated amount represented a compromise which prevented the prosecution from presenting additional evidence that Movant's involvement actually "far exceeded the 150 to 500 grams of cocaine base" stipulated to by the Movant (sentencing hearing Tr.p. 7, line 9).  Furthermore, the finding that Movant had a prior felony drug conviction is not subject to a *Booker* challenge because the Court specifically stated that the rule in *Booker* did not apply to criminal history enhancements. *Booker*, 125 S. Ct. at 756.  Additionally, unlike *Booker* where the facts were used to enhance Defendant's sentence, here, Defendant agreed to the sentence of 144 months as part of his plea agreement.  Movant has failed to show either that his counsel's representation fell below an objective standard of reasonableness or but for his counsel's errors he would not have pleaded guilty and would have insisted on going to trial.

Movant's claim of ineffective assistance of counsel along with all other arguments in Ground One are without merit. Accordingly, Ground One is denied.

**B. Ground Two: Movant's Sixth Amendment right to a jury determination of facts which served to increase his sentence were [sic] denied when the court made the factual determination on its own.**

Movant contends that the court's factual determination of drug quantity violated his Sixth Amendment right to a jury determination. Movant withdrew his objection to the Presentence Report which indicated that he was directly responsible for between 500 grams and 1.5 kilograms of cocaine base. As already noted, Movant agreed that the Judge could make sentence enhancements by confirming in the plea agreement that the Total Offense Level would be determined by the Court. The Court adopted the confessed fact as a stipulation which was used as a sentence enhancement. *See Blakely*, 542 U.S. 296, 124 S. Ct. at 2541.

Next, Movant's argument that the Court decided facts only determinable by a jury rests on the erroneous assumption that *Blakely*, as applied to the United States Sentencing Guidelines in the subsequently decided *Booker* opinion, is retroactively applicable on collateral review. For reasons stated in Ground One and adopted here, the Court rejects that argument. Because Movant was sentenced on October 27, 2003, and *Booker* was not decided until January 12, 2005, *Booker* does not apply to his case. Additionally, for reasons stated in Ground One, any retroactive application of *Blakely/Booker* would offer Movant no relief.

Next, in his plea agreement, Movant waived his right to appeal his conviction or sentence in any post conviction proceeding, including collateral review under § 2255. The Eighth Circuit has recognized the validity of plea agreements that include a waiver of appellate rights and waivers of

post-conviction relief pursuant to § 2255, with a few very narrow exceptions, none of which apply here.  Movant raises no compelling arguments that any of the exceptions apply.

Finally, Movant's complaint that the § 851 sentencing enhancement was not charged in the indictment has no merit.  As already noted, the Assistant United States Attorney filed the notice of enhancement on September 16, 2002.  He entered his guilty plea on July 28, 2003.  He made no challenge to the enhancement in a direct appeal.  The Court properly applied the enhancement.  As already noted, he confessed at the plea hearing that he understood that the minimum sentence he could receive would be 120 months.  Accordingly, Ground Two is denied.

**C. Ground Three: The Court's factual determination that Movant had a prior felony drug conviction as defined by 21 U.S.C. § 802(44) was a factual finding that was not charged and increased the length of his sentence.**

Movant contends that the court's factual determination of the prior felony drug conviction as defined by 21 U.S.C. § 802(44)[6] violated his Sixth Amendment right to a jury determination.  However, there are multiple alternative reasons for denying Ground Three.

First, Movant's argument rests on the erroneous assumption that *Blakely*, as applied to federal sentencing in *Booker*, is retroactively applicable on collateral review.  This court has concluded that *Booker* is not retroactively applicable to cases on collateral review (*see* Ground One).  Because Movant was sentenced on October 27, 2003, and *Booker* was not decided until January 12, 2005, *Booker* does not retroactively apply to this case.

---

[6]  21 U.S.C. § 802(44) states: "The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

Secondly, even if *Booker* was retroactively applied, the Court's finding that Movant had a prior felony drug conviction is not subject to a *Booker* challenge because the Court specifically stated that its new rule did not apply to criminal history enhancements. *Booker*, 125 S. Ct. at 756. *Almendarez-Torres* reserves to the sentencing judge application of recidivism issues.

Third, in his plea agreement, Movant waived his right to appeal his conviction or sentence in any post conviction proceeding, including collateral review under § 2255. The Eighth Circuit has recognized the validity of plea agreements that include a waiver of appellate rights and waivers of post-conviction relief pursuant to § 2255, with a few very narrow exceptions (*see* Ground One). Movant raises no compelling arguments that any of the exceptions apply.

Therefore, based on multiple alternative arguments, Movant's claim that the court's factual determination of prior felony drug conviction violated his Sixth Amendment right to a jury determination is without merit. Accordingly, Ground Three is denied.

**D. Ground Four: The provisions of 21 U.S.C. § 851(c)(1) violate the Sixth Amendment to the Constitution of the United States.**

Movant contends that 21 U.S.C. § 851(c)(1) violates the Sixth Amendment because Section 851 "excludes the jury in the determination" of prior convictions.[7] However, in his plea agreement,

_____

[7] 21 U.S.C. § 851(c)(1) states: "If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and

Movant waived his right to appeal his conviction or sentence in any post conviction proceeding, including on collateral review under § 2255. The Eighth Circuit has recognized the validity of plea agreements that include a waiver of appellate rights and waivers of post-conviction relief pursuant to § 2255 (*see* Ground One). Movant consented that sentencing issues be determined by the Judge in the plea agreement. He also acknowledged under oath that the minimum sentence he could receive would be 120 months.

A claim based on a federal statute or rule can be raised on collateral review only if it involves "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962). *See Reed v. Farley*, 512 U.S. 339, 354 (1994).

Given the facts contained in the record, this Court finds that the Movant's arguments fail. First, no judicial determination of fact occurred because Movant admitted the relevant facts by failing to maintain his objection to the presentence report. *See United States v. Johnson,* 408 F.3d 535, 539 (8th Cir. 2005) (stating that because defendant failed to object to the drug quantity in the PSR, the fact was deemed admitted for sentencing purposes); *United States v. Moser,* 168 F.3d 1130, 1132 (8th Cir.1999) (unless defendant objects to a specific factual allegation contained in the PSR, the sentencing court may accept that fact as true for sentencing purposes). The Presentence Report stated that on October 10, 1991, Movant was sentenced ten years in the Missouri Department of Corrections as a result of a conviction for sale of a controlled substance.

---

conclusions of law."

Movant's Presentence Report also stated that the present offense was committed while the Movant was on parole from his prior conviction and within two years from his release from custody. Based on these facts, the Report concluded that the Movant had established a criminal history category of III under the federal sentencing guidelines. The preliminary Presentence Report also concluded Movant was responsible for "at least 500 but less than 1.5 kilograms of cocaine base." Movant initially filed an objection to the final Presentence Report finding that he was responsible for "at least 500 but less than 1.5 kilograms of cocaine base," at which time the Assistant United States Attorney stated that the government was willing to stipulate that Movant would be held responsible for at least 150 grams but less than 500 grams of Cocaine base as part of the plea agreement rather than presenting evidence that the quantity of the drug actually "far exceeded" this amount. Movant withdrew his objections and agreed to a sentence of 144 months.

Not only did the Movant stipulate to the relevant sentencing factors, but the Court followed the parties' recommendations and sentenced Movant to imprisonment for 144 months. Because there were no facts used by the Court beyond those stipulated by the Movant, and because the Movant's sentence was not enhanced beyond that to which he agreed, this Court finds that this case neither involves "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). As a result, Movant's claim that 21 U.S.C. § 851(c)(1) violates the Sixth Amendment because the statute "excludes the jury in the determination" of prior convictions is not persuasive. (*See* Ground One *supra).* Accordingly, Ground Four is without merit, and is therefore denied.

**E. Ground Five: The Movant's Fifth Amendment right to a grand jury indictment charging each of the elements of the offense and Movant's Sixth Amendment right to notice were violated when the precise amount of drugs and the alleged prior felony drug conviction were not charged in the indictment.**

Movant's argument alleges both a violation of his Fifth Amendment constitutional rights as well as ineffective assistance of counsel. The constitutional challenge is not valid because Movant waived his right of appeal (*see* Ground One *supra*). The Eighth Circuit has determined that a waiver of a right to appeal is enforceable if the waiver is knowingly and voluntarily made, and the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. Because the sentencing hearing transcript contains ample evidence that these requisite conditions were met, and because Movant presents no evidence to the contrary, this Court must conclude that Movant has waived his right to appeal. As a result, this Court will only examine the Movant's allegations in Ground Five for ineffective assistance of counsel.

Movant argues his counsel was ineffective for failing to file notice of appeal and failing to object to the judicial determination of facts in support of elements of the offense not included in the grand jury indictment. Specifically, Movant argues that his Sixth Amendment right to notice was violated because the grand jury indictment did not include "any precise amount of cocaine base over 5 grams," and did not include the prior felony drug conviction as defined by 21 U.S.C. §802(44)[8] which is an element of the offense under 21 U.S.C. §841(b)(1)(B).[9]

While the Movant is correct that an indictment must set forth each element of the crime that it charges, *Hamling v. United States,* 418 U.S. 87, 117 (1974), it does not need to include factors

---

[8] *See supra* note 5.

[9] *See supra* note 2.

relevant only to sentencing of an offender found guilty of the charged crime. *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998). Within limits, *see McMillan v. Pennsylvania,* 477 U.S. 79, 84-91 (1986), the question of which factors are elements of the crime and which are sentencing factors is normally a matter for Congress. *See Staples v. United States,* 511 U.S. 600, 604 (1994) (definition of a criminal offense is "entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.") (quoting *Liparota v. United States,* 471 U.S. 419, 424 (1985)).

The structure of 21 U.S.C. §841 is clear evidence of Congress' intent. The statute is divided between the "unlawful acts" of subsection (a) which identifies the basic elements of the offense, and the "penalties" of subsection (b) which lists the sentencing factors. The two factors challenged by the Movant are the quantity of drugs, *see* 21 U.S.C.§841(b)(1)(B)(iii), and the prior conviction for a felony drug offense, *see* 21 U.S.C. §841(b)(1)(B) which fall squarely within sentencing factors of subsection (b).

The quantity of drugs is often treated as a sentencing factor by the courts. *See U.S. v. Diaz*, 296 F.3d 680, 683 (8th Cir. 2002) (requiring a district court is to determine "the existence of sentencing factors, including drug quantity, by a preponderance of the evidence."); *U.S. v. Smith*, 240 F.3d 732, 737 (8th Cir. 2001) ("The district court may determine at sentencing the quantity of drugs involved in the offense for purposes of applying § 841(b), even if the drug quantity was not charged in the indictment and found by the jury beyond a reasonable doubt," provided the sentence does not exceed the statutory maximum.); *U.S. v. Mickelson*, 378 F.3d 810, 821 (8th Cir. 2004) ("Under the Sentencing Guidelines, the quantity of drugs is an issue for the sentencing judge" who "may rely solely upon [an undisputed] presentence report for findings."). Furthermore, the Supreme Court noted in

27

*Almendarez-Torres* that the "prior commission of a serious crime is a typical a sentencing factor as one might imagine." 523 U.S. at 230. The prior conviction for a felony drug offense was included by Congress to increase the penalty for recidivist offenders. Congress' decision to treat recidivism as a sentencing factor rather than an element of the crime is within its constitutional authority. *Id.* at 236.

The foregoing analysis is not altered by *Blakely* or *Booker*. *Apprendi*, on which *Blakely* and *Booker* are based, specifically states that its holding does not overturn the court's holding in *Almendarez-Torres* and its new rule does not extend to grand jury indictments. *Apprendi*, 530 U.S. at 477 (2000). *See United States v. Buckland,* 289 F.3d 558, 570 (9th Cir.2002) (en banc) (*Apprendi* does not limit courts' ability to make drug quantity findings and impose sentences based on those findings if the sentence is within the statutory maximum sentence for the crime of conviction found by the jury). *See also Diaz*, 296 F.3d at 683; *Smith*, 240 F.3d at 737.

Movant's claim of ineffective assistance of counsel is without merit. Counsel is not required to make meaningless, futile arguments. This court finds that counsel was not in error for failure to raise this Constitutional challenge. The Court notes that even if counsel committed error when failing to challenge the Supreme Court's prior holdings, such omission does not rise to the level of an error "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Accordingly, Ground Five is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Wayne J. Sumlin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Movant's § 2255 Motion.

Dated this <u>8th</u> day of August, 2005.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE